[Cite as *Simpkins v. Grace Brethren Church of Delaware*, 2014-Ohio-3465.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| JESSICA SIMPKINS, et al | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| Plaintiffs-Appellees/Cross-Appellants | : | Hon. Patricia A. Delaney |
| | : | |
| -vs- | : | |
| | : | Case No. 13 CAE 10 0073 |
| GRACE BRETHREN CHURCH OF | : | |
| DELAWARE, OHIO | : | |
| | : | O P I N I O N |
| Defendant-Appellant/Cross-Appellee | | |

CHARACTER OF PROCEEDING:     Civil appeal from the Delaware County
                            Court of Common Pleas, Case No. 12 CV C
                            05 0605

JUDGMENT:                   Affirmed in Part, Reversed and Remanded
                            in Part

DATE OF JUDGMENT ENTRY:     August 8, 2014

APPEARANCES:

For Plaintiffs-Appellees/Cross-Appellants     For Defendant-Appellant/Cross-Appellee

JOHN K. FITCH                                 WILLIAM CURLEY
580 South High St., Ste. 100                  JAMES DORGAN III.
Columbus, OH  43215                           10 West Broad Street, Ste. 2400
                                              Columbus, OH 43215
DAVID A. FITCH
9211 Hawthorn Point
Westerville, OH 43082

STEPHEN FITCH
65 East State Street, Ste. 1000
Columbus, OH  43215

*Gwin, P.J.*

{¶1} Appellant/Cross-Appellee and Appellees/Cross-Appellants appeal the judgment by the Delaware County Court of Common Pleas.

*Facts & Procedural History*

{¶2} In March of 2008, appellee/cross-appellant Jessica Simpkins ("Simpkins") was raped by Brian Williams ("Williams"), the senior pastor at Sunbury Grace Brethren Church ("Sunbury"). Williams pled guilty to two counts of sexual battery in violation of R.C. 2907.03(A)(12) and was sentenced to two consecutive four-year prison terms. Williams previously worked as a youth pastor at appellant/cross-appellee Grace Brethren Church of Delaware, Ohio ("Delaware Grace"). Simpkins and her father Gene Simpkins originally sued Sunbury, Delaware Grace, Pastor Darrell Anderson ("Anderson") and Williams in Ross County Common Pleas Court. While that case was pending, Simpkins settled all claims against Sunbury for $90,000. In June of 2011, Simpkins dismissed the case without prejudice after the Ross County Common Pleas Court granted Delaware Grace's summary judgment motion on all but one of the claims -- negligent hiring, retention, and supervision.

{¶3} On May 25, 2012, Simpkins re-filed the case in Delaware County Court of Common Pleas against Delaware Grace and Anderson. The complaint alleged that, for a number of years, Williams was employed as a youth pastor by Delaware Grace; that in the early 1990's Delaware Grace learned that Williams had engaged in sexually inappropriate sexual conduct with a minor female associated with Lexington Grace Brethren Church but took no action; that in 2001, Delaware Grace learned that Williams had made inappropriate sexual comments to and inappropriately touched a female he

was counseling but took no action; and that in 2004, Williams left his employment with Delaware Grace and became senior pastor at Sunbury with the assistance, financial support, guidance, and supervision of Delaware Grace. Simpkins alleged causes of action for intentional infliction of emotion distress, breach of fiduciary duty, willful wanton and reckless misconduct, negligence, negligent hiring, retention and supervision, failing to report child abuse, and respondeat superior. The complaint sought damages for past and future economic and non-economic injury to Simpkins, punitive damages, and loss of consortium injuries for her father Gene Simpkins.

{¶4}   Delaware Grace and Anderson filed motions for summary judgment. On March 20, 2013, the Delaware County Common Pleas Court issued a judgment entry incorporating the Ross County judgment entry on summary judgment and dismissing the claims for intentional infliction of emotional distress, breach of fiduciary duty, willful wanton and reckless misconduct, punitive damages, negligence, and respondeat superior. As such, the trial court granted summary judgment to Anderson on all counts. The trial court granted summary judgment to Delaware Grace on all counts except one and permitted a trial on negligent hiring, retention, or supervision, or negligent recommendation, promotion or support. The trial court set the case for trial on June 11, 2013.

{¶5}   During the preliminary discussions with the trial court, the parties indicated there was some confusion with the trial court's summary judgment entry regarding whether the foreseeability of Williams' conduct was a factual issue to be submitted to the jury. From the bench on June 11, 2013 and in a written entry on June 12, 2013, the trial court issued a revised summary judgment entry stating that, "to the extent that any

party construes the Ross County decision as finding no factual issue regarding the Delaware church's ability to anticipate or foresee [Williams'] misconduct, this Court declines to accept or follow that ruling." The trial court thus expanded the Ross County ruling to permit a trial on claims that the alleged damages proximately resulted from negligence by Delaware Grace in hiring, retaining, or supervising Williams, or in recommending, promoting and supporting his hiring and retention by Sunbury.

{¶6} The trial commenced on June 11, 2013. April Brown, fka Jokela ("Brown") testified that she attended Lexington Grace Brethren Church ("Lexington Grace") in Richland County and, in the early 1990's, when she was between 13 and 16 years of age, her church went on a joint mission trip with Delaware Grace. Williams was the youth pastor of Delaware Grace at the time. Brown testified that while at a concert during the mission trip, Williams started rubbing her shoulders, moved his hand down her back between her shirt and the overalls she was wearing, and continued to move his hand down right at her panty line so his hand was on her skin on her lower back and the top area of her buttocks. Brown jerked forward and left the concert.

{¶7} Brown initially told her friend Jason about the incident during the trip and told her mother, Mary Storz ("Storz"), about the incident when she returned home. Jason Saxton testified that April was upset and shaken up and told him that day that Williams attempted to put his hand up her shirt and then down her pants. Storz reported the incident to Lexington Grace. Brown and Storz testified that there subsequently was a meeting at Lexington Grace between Brown, Storz, Brown's youth pastor, Williams, and other Delaware Grace officials. Brown could not remember the names of the individuals who attended from Delaware Grace, but thought it was a

senior pastor and elders or deacons.  Brown stated that, during the meeting, she gave a full account of what happened to her, including that she felt scared and uncomfortable, and Williams apologized and said he was sorry if she felt uncomfortable.  Brown testified that Delaware Grace officials made light of the incident and acted as if she were making it up.  Storz stated that, at the end of the meeting, one of the men from Delaware Grace said, "let's just keep this quiet to protect our brother."  Storz was upset and felt the officials from Delaware Grace were protecting Williams.  Neither Brown nor Storz reported the incident to law enforcement and neither contacted Delaware Grace after the meeting to find out if Delaware Grace took any action with regard to Williams.

{¶8}   Robin Weixel ("Weixel") fka McNeal testified that she attended Delaware Grace when Williams was the youth pastor.  In 2002, when she was eighteen (18) years old, Weixel applied to go on a mission trip and had to meet with a pastor as part of the application process.  When she met with Williams, he did several things Weixel felt were inappropriate: shared the details of his sex life with his wife with Weixel; told Weixel that "most men view women as a thing to be fucked;" shared with Weixel his view on women dressing provocatively; used his finger to trace around the outside of the tank top she was wearing over her shoulder; and told her he could get away with having sex with her right there and then in his office, but his guilty conscience would stop him.  Weixel reported the incident to Anderson and, during a meeting with Williams and Anderson, Williams told her he did not remember saying those things, but if he did, he was sorry.

{¶9}   Anderson testified that in 2002 he was the acting senior pastor at Delaware Grace and was on the elder board.  Anderson confirmed that though Williams was leaving to be the senior pastor at Sunbury, he remained on the payroll at Delaware

Grace until December 31 of 2005. Further, that Delaware Grace gave Sunbury a lot of financial support, including $40,000 in 2005, $20,000 in 2006, and $10,000 in 2007. Anderson said Weixel contacted her after the incident in 2002 and said Williams offended her and she needed Anderson to go with her to talk with Williams. Anderson did not view this as a complaint by Weixel. Anderson testified the conduct was inappropriate as there was sexual language involved. Anderson did not report the conduct to the other members of the elder board, but met with Williams afterwards and told him the conduct was inappropriate. Anderson testified that Weixel never asked him to go further with the information. Further, that he had no other indication that what happened in 2008 would happen and had no knowledge of the Brown incident.

{¶10} Gary Underwood ("Underwood"), senior pastor at Delaware Grace since October of 2004, testified that Anderson never told him about the 2002 incident and no records reflect the 2002 incident or the earlier 1990's incident. Underwood confirmed that Delaware Grace provided financial support and guidance to Sunbury after Delaware Grace decided to "plant" a Grace Brethren church in the town of Sunbury. Underwood stated that Williams' behavior was inappropriate and should have been reported. Underwood would not have supported Williams as pastor of Sunbury if he had known about the Brown and/or Weixel incident.

{¶11} Williams testified he rubbed Brown's shoulders on the mission trip. He remembers after the incident meeting with David Martin, Jeff Gill, Brown, and the pastor from Lexington Grace. Williams confirmed he was inappropriate with Weixel when he made a statement about having sex with her and when he traced the outline of her tank top. Anderson reprimanded him verbally for his conduct. Williams assumed the board

of elders was told, but he did not know. Williams testified Delaware Grace assured him of their support to become pastor of Sunbury and, if they were not going to support him, he was going to look for another job. Williams reported weekly to the Delaware Grace elder board regarding his activities as senior pastor at Sunbury and, for a period of time, Anderson acted as his supervisor while Williams was at Sunbury. Williams stated that, after 2006 or 2007, Delaware Grace did not have authority over the Sunbury budget other than the contributions they provided.

{¶12} Gene Simpkins testified that, prior to the incident, Simpkins was happy, bubbly and cheery and, after the incident, she was angry, demanding, and withdrawn. Due to the incident, Gene Simpkins stated he lost his trust in the church and missed how his daughter used to act.

{¶13} Simpkins testified that on March 6, 2008, when she was fifteen (15) years old, she went to a counseling session with Williams. Simpkins had been attending Sunbury since her freshman year in high school. At the counseling session on March 6, 2008, Williams closed the door, dropped his pants, and told Simpkins to suck his penis, which Simpkins eventually did. Simpkins tried to get away, but Williams blocked the door, pushed her to the ground, removed her pants, and inserted his penis into her vagina. Simpkins testified that, after the incident, it was hard for her to go back to school because everyone was talking about her. She briefly saw a counselor for nightmares about being kidnapped or raped. After Simpkins graduated high school, she played basketball in college until she had to quit due to an injury. She is currently working full-time as a cashier. Simpkins got good grades in college. When asked how the incident affected her, Simpkins testified that she thinks about the incident two to

three times per week and has anxiety when she thinks about the incident, has trust issues with men, and is afraid of the dark. Simpkins has not had mental health counseling or treatment since 2008 and does not have current plans to seek mental health counseling or treatment.

{¶14} Jeffrey Smalldon ("Smalldon"), a clinical psychologist, testified that he interviewed Simpkins three times and diagnosed her with chronic post traumatic stress disorder and dysthymic disorder (low grade depression). Smalldon stated that Simpkins does not want to talk about the incident, is distrustful of men, is afraid of the dark, and has anxiety. Smalldon concluded that Simpkins is in need of long-term treatment.

{¶15} Robin Frey, the bookkeeper at Delaware Grace since 2002 testified that, through the incident date of March of 2008, monthly payments were made from Delaware Grace to Sunbury, though those payments reduced in amount each year.

{¶16} David Martin ("Martin"), who sat on the elder board at Delaware Grace in the late 1980's and early 1990's, said he never saw or heard Williams do or say anything inappropriate. Martin recalls having a meeting with Williams, a girl, the girl's mother, and a pastor from another church. Martin testified that, at the meeting, Williams apologized and Martin thought the issue had been resolved.

{¶17} Rita Boham ("Boham") is a member of Delaware Grace who frequently went on youth trips with Williams as a female staff member. Boham never saw or heard him do or say anything appropriate. Boham testified that Jeff Gill contacted her after a trip in the 1990's and Jeff Gill and Martin asked her if anything inappropriate happened on the trip. Boham told them Williams and another female staff raced around and

elbow-teased and maybe he should not have acted like that. Boham testified that Jeff Gill asked her not to discuss the incident with other people.

{¶18} Jeff Gill ("Gill") was the senior pastor at Delaware Grace from 1982 to 2002. Gill testified that when he met with the pastor at Lexington Grace regarding the Brown incident, he told the other pastor he would investigate Brown's claims. Williams told Gill that Brown was angry with him and that he only rubbed her shoulders. Gill and Martin interviewed the other adults on the trip and they said many people were rubbing each other's shoulders. When Gill and Martin met with Brown, Storz, and the other pastor, Williams read a statement. Gill testified that he did not say "let's keep this quiet to protect our brother." Gill felt the issue was resolved that day after Williams read his statement.

{¶19} The jury found Delaware Grace negligent and specifically found Delaware Grace was aware of the past behavior of Williams and failed to do a proper investigation and documentation of the previous two incidents and, as a result, Williams was empowered to a greater responsibility as senior pastor at Sunbury. The jury returned a verdict in favor of Simpkins for $1,378.85 for past economic damages, $1,500,000 for past non-economic damages, $150,000 for future economic damages, and $2,000,000 for future non-economic damages for a total of $3,651,378.85. The jury also returned a verdict for Simpkins' father in the amount of $75,000 for loss of consortium.

{¶20} After the jury returned their verdict, the parties filed briefs on damages. On August 5, 2013, the trial court issued a judgment entry applying a setoff of $1,378.85 in connection with the settlement with Sunbury, applied Ohio's damages cap statute of R.C. 2315.18 to reduce the award for Simpkins' past and future non-economic damages

to $350,000, and entered judgment for Simpkins in the amount of $500,000 and for her father Gene in the amount $75,000 on his loss of consortium claim. Delaware Grace subsequently filed a motion for judgment notwithstanding the verdict and motion for new trial or remittitur. The trial court denied the motion for judgment notwithstanding the verdict and denied the motion for new trial. However, the trial court granted Delaware Grace's motion for remittitur and reduced Simpkins' future economic damages to $60,000. The trial court gave Simpkins time to accept or reject the remittitur after the parties' appeals are exhausted. Delaware Grace appeals and assigns the following as error:

{¶21} "I. WILLIAMS' PRIOR MISCONDUCT WAS, AS A MATTER OF LAW, INSUFFICIENT TO MAKE HIS SUBSEQUENT RAPE OF SIMPKINS FORESEEABLE.

{¶22} "II. A TRIAL COURT MUST GIVE A PARTY'S REQUESTED JURY INSTRUCTION IF IT IS A CORRECT STATEMENT OF THE LAW AS APPLIED TO THE FACTS OF THE CASE. IN THIS CASE, THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO GIVE APPELLANT'S PROPOSED JURY INSTRUCTIONS ON: (A) PLAINTIFFS' CLAIM FOR NEGLIGENT PROMOTION, RECOMMENDATION AND SUPPORT, AND (B) THE ISSUE OF FORESEEABILITY.

{¶23} "III. IN A TORT CASE WHERE PLAINTIFF'S DAMAGES WERE CAUSED BY AN INTENTIONAL RAPE BY A CHURCH PASTOR AND THE ALLEGED NEGLIGENCE OF THE PASTOR'S PRIOR EMPLOYER, R.C. 2307.22 AND 2307.23 REQUIRE THE JURY TO APPORTION LIABILITY BETWEEN THE PASTOR-RAPIST AND THE PASTOR'S PRIOR EMPLOYER.

{¶24} "IV. WHEN A PLAINTIFF TESTIFIES THAT SHE HAS NO INTENTION OF SEEKING FUTURE PSYCHOLOGICAL TREATMENT, ANY JURY AWARD FOR FUTURE ECONOMIC LOSS FOR SUCH TREATMENT IS NOT SUPPORTED BY THE EVIDENCE."

{¶25} Appellee/Cross-appellant Simpkins assigns the following as error:

{¶26} "I. THE TRIAL COURT ERRED IN REDUCING THE JURY VERDICT FOR JESSICA SIMPKINS' NON-ECONOMIC DAMAGES AS R.C. 2315.18 IS UNCONSTITUTIONAL UNDER THE OHIO AND UNITED STATES CONSTITUTIONS AS APPLIED TO JESSICA SIMPKINS.

{¶27} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DGBC ON THE ISSUE OF PUNITIVE DAMAGES.

{¶28} "III. THE TRIAL COURT ERRED IN HOLDING THAT JESSICA SIMPKINS SUFFERED A SINGLE "INJURY OR LOSS" FOR PURPOSES OF APPLYING R.C. 2315.18.

{¶29} "IV. THE TRIAL COURT ERRED IN RULING THAT JESSICA SIMPKINS SUFFERED A SINGLE INJURY OR LOSS AS THAT RULING VIOLATES THE OHIO CONSTITUTION.

{¶30} "V. THE TRIAL COURT ERRED IN REFUSING TO AWARD JESSICA SIMPKINS' FULL DAMAGES PURSUANT TO R.C. 2307.60."

I.

{¶31} Delaware Grace argues that the trial court erred in denying their motions for directed verdict and motion for judgment notwithstanding the verdict because the

prior misconduct by Williams was, as a matter of law, insufficient to make his conduct in 2008 foreseeable.

*Motion for Directed Verdict and Motion for Judgment Notwithstanding the Verdict*

{¶32} A trial court's decision on a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *Groob v. Keybank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170. Civil Rule 50 provides for a motion for directed verdict, which may be made at the opening statement of the opponent, at the close of opponent's evidence, or at the close of all the evidence. Upon receiving the motion, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed. Civil Rule 50(A)(4). If the trial court finds on any determinative issue reasonable minds could come but to one conclusion on the evidence submitted, then the court shall sustain the motion and direct the verdict as to that issue. A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in plaintiff's favor. *See Hargrove v. Tanner*, 66 Ohio App.3d 693, 586 N.E.2d 141 (9th Dist. 1990).

{¶33} The standard for granting a motion for judgment notwithstanding the verdict under Civil Rule 50(B) is the same used for granting a Civil Rule 50(A) directed verdict. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998); *Wagner v. Roche Laboratories*, 77 Ohio St.3d 116, 121, 671 N.E.2d 252, 256 (1996). In other words, as long as substantial competent evidence supports the non-moving party, and reasonable minds could reach different conclusions about that evidence, the motion must be denied. *See Strother v. Hutchinson*, 67 Ohio St.2d 282, 284-85, 423 N.E.2d 467 (1981); *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45

Ohio St.2d 271, 275, 344 N.E.2d 334 (1976).  In reviewing a motion for JNOV, courts do not consider the weight of the evidence or the witness credibility; rather, courts consider the much narrower legal question of whether sufficient evidence exists to support the verdict.  *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998); *Wagner v. Roche Laboratories*, 77 Ohio St.3d 116, 121, 671 N.E.2d 252, 256 (1996).

*Negligence & Foreseeability*

**{¶34}** Negligent retention, supervision, hiring, and/or promotion are negligence-based torts which require proof of the basic elements of negligence: duty, breach, proximate cause, and damages.  *Abrams v. Worthington,* 169 Ohio App.3d 94, 2006-Ohio-5516 (10th Dist.).  The existence of a duty in a negligence case is a question of law for a court to determine and there is no formula for ascertaining whether such a duty arises.  *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).  When considering a claim based upon negligent hiring or retention, the issue of whether a duty is owed is based upon the foreseeability of the injury.  *Evans v. Ohio State University*, 112 Ohio App.3d 724, 680 N.E.2d 161 (10th Dist. 1996).  The existence of an employer-employee relationship imposes a duty upon the employer to prevent foreseeable injury to others by exercising reasonable care to refrain from employing an incompetent employee.  *Chapa v. Genpak, LLC,* 10th Dist. Franklin No. 12AP-466, 2014-Ohio-897. Injury is foreseeable if a defendant knew or should have known that his act was likely to result in harm to someone.  *Mudrich v. Standard Oil Co.*, 153 Ohio St.31, 39, 90 N.E.2d 859 (1950).

{¶35} The foreseeability of a criminal act depends upon the knowledge of the defendant, which must be determined by the totality of the circumstances. *March v. Steed Enterprises, Inc.* 5th Dist. Muskingum No. CT2012-0058, 2013-Ohio-4448. It is when the totality of the circumstances is "somewhat overwhelming" that a defendant will be held liable. *Id.*

{¶36} Upon our de novo review, we find no error by the trial court to deny the motions for directed verdict and motion for judgment notwithstanding the verdict as the prior conduct of Williams was not, as a matter of law, insufficient to make his 2008 conduct foreseeable. In this case, the two prior incidents which Delaware Grace became aware of both consisted of sexual misconduct and involved minor females being supervised or counseled by Williams as a church employee either at the church or at a church camp. In light of this similar prior conduct, we find the totality of the circumstances indicates that a reasonable jury could have found that Delaware Grace should have reasonably foreseen the 2008 incident. Reasonable minds could also differ as to whether Delaware Grace took reasonable steps to protect Simpkins and whether these incidents should have influenced the church's retention and promotion of Williams to Sunbury. There is a need for the trier of fact to weigh and determine witness credibility regarding these issues. Because reasonable minds could have reached different conclusions on whether the 2008 incident was foreseeable, the trial court properly denied the motions for directed verdict and motion for judgment notwithstanding the verdict. Delaware Grace's first assignment of error is overruled.

II.

{¶37} Delaware Grace argues the trial court erred in refusing to give a specific jury instruction they requested on negligent promotion/recommendation/support and erred in refusing to give their requested jury instruction on foreseeability.

{¶38} The trial court has the duty to instruct the jury on the applicable law on all issues raised by the pleadings and evidence, and it must give jury instructions that correctly and completely state the law. *Pallini v. Dankowski*, 17 Ohio St.2d 51, 245 N.E.2d 353 (1969); *Marshall v. Gibson*, 19 Ohio St.3d 10, 482 N.E.2d 583 (1985), *Groob v. Keybank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E. 2d 1170. A jury charge should be "a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." *Marshall*, 19 Ohio St.3d at 12, 482 N.E.2d 583. Furthermore, "[a] charge ought not only be correct, but it should also be adapted to the case and so explicit as not to be misunderstood or misconstrued by the jury." *Id.* Ordinarily, a trial court should give requested jury instructions if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusions sought by the instruction. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991).

{¶39} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3rd Dist. 1993). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Whether the jury instructions

correctly state the law is a question of law, which we review de novo. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

*Negligent Recommendation, Retention, Promotion Instruction*

{¶40} Delaware Grace argues the trial court erred in failing to give the specific negligent recommendation, retention, and promotion instruction it requested. To prove the claims of negligent hiring, retention, supervision, retention, or promotion, a plaintiff must establish: (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of the incompetence, (4) the employer's act causing the plaintiff's injuries, and (5) the employer's negligence in hiring, retaining, or supervising the employee as the proximate cause of the plaintiff's injuries. *Clifford v. Licking Baptist Church*, 5th Dist. Licking No. 09 CA 0082, 2010-Ohio-1464. Negligent supervision and retention are negligence-based torts which require proof of the basic elements of negligence; and the elements as listed above "correspond with the basic elements of negligence – duty, breach, proximate cause, and damages." *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516 (10th Dist.); *Ball v. Stark,* 10th Dist. Franklin No. 11AP-177, 2013-Ohio-106.

{¶41} In this case, the trial court provided the jury with the instruction for negligence, including an instruction on duty, ordinary care, the test for foreseeability, proximate cause, and damages. These basic elements of negligence correspond directly to the elements listed in the instruction requested by Delaware Grace. Accordingly, we find the trial court did not err in refusing to give the instruction as a trial

court may refuse to give an instruction that is redundant.  *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988).

*Foreseeability*

{¶42}  Delaware Grace further contends the trial court erred in failing to give their requested instruction on foreseeability.  The trial court gave the standard Ohio Jury Instruction for foreseeability.  The trial court then added a sentence that "foreseeability for future intentional criminal conduct requires stronger knowledge than foreseeability of other possible future conduct."  Delaware Grace sought an instruction consisting of the standard Ohio Jury Instruction for foreseeability plus an additional sentence that "the foreseeability of a criminal act depends on the knowledge of the defendant, which must be determined by the totality of the circumstances, and it is only when the totality of the circumstances are somewhat overwhelming that the defendant will be held liable."  Delaware Grace asserts this sentence is a correct statement of law and is required by our decision in *March v. Steed Enterprises, Inc.* 5th Dist. Muskingum No. CT2012-0058, 2013-Ohio-4448.

{¶43}  While we agree Delaware Grace's instruction is a correct recitation of the law pursuant to our decision in the *March* case, the *March* decision was not issued until October 2, 2013, several months after the June 2013 trial was held in this case. Accordingly, the trial court did not abuse its discretion in failing to give the foreseeability instruction requested by Delaware Grace.

{¶44}  Delaware Grace's second assignment of error is overruled.

III.

{¶45} Delaware Grace argues the trial court erred in failing to require the jury to apportion liability between Williams and Delaware Grace. We agree.

{¶46} R.C. 2307.23(A) requires the trier of fact to make factual findings specifying the percentage of fault attributable to the plaintiff, to each party from whom the plaintiff seeks recovery, and attributable to each person from whom plaintiff does not seek recovery in the action. Once the jury makes these findings, R.C. 2307.22 provides that, when more than one tortfeasor has proximately caused a person's damage, any tortfeasor who caused fifty percent or less of the conduct is responsible for only his or her proportional share of the economic loss. R.C. 2307.22. However, if the trier of fact determines that more than fifty percent of the tortious conduct is attributable to one defendant, the defendant is jointly and severally liable for all compensatory damages that represent economic loss. R.C. 2307.22. With regard to noneconomic damages, if a trier of fact determines that two or more persons proximately caused the same injury, each defendant is liable only for their proportionate share of the compensatory damages that represent noneconomic loss and this proportionate share is calculated by multiplying the total amount of noneconomic damages awarded to plaintiff by the percentage of tortious conduct that was determined pursuant to R.C. 2307.23 to be attributable to that defendant. R.C. 2307.22(C).

*Vicarious Liability*

{¶47} The trial court's first reason for denying Delaware Grace's request for an instruction and jury interrogatories on apportionment was its determination that R.C. 2307.24(B) rendered R.C. 2307.22 inapplicable due to Simpkins' claims being based on

vicarious liability and thus the trial court treated Williams and Delaware Grace as one person for purposes of the apportionment statutes. R.C. 2307.24 provides as follows:

> Sections 2307.22 and 2307.23 of the Revised Code do not affect any other section of the Revised Code or the common law of this state to the extent that the other section or common law makes a principal, master, or other person vicariously liable for the tortious conduct of an agent, servant, or other person. For purposes of Section 2307.22 of the Revised Code, a principal and agent, a master and servant, or other persons having a vicarious liability relationship shall constitute a single party when determining percentages of tortious conduct in a tort action in which vicarious liability is asserted.

{¶48} The Supreme Court of Ohio has stated that, "an employer or principal is vicariously liable for the torts if its employees or agents under the doctrine of respondeat superior." *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712. Further, that it is "axiomatic that for the doctrine of respondeat superior to apply, an employee must be liable for a tort committed in the scope of his employment." *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991), quoting *Strock v. Pressnell*, 38 Ohio St.3d 207, 527 N.E.2d 1235 (1988).

{¶49} In Ohio, negligent hiring, supervising, and retention are separate and distinct from torts from other theories of recovery such as negligent entrustment and respondeat superior and an employer can be held independently liable for negligently

hiring, supervising, or retaining an employee. *Stephens v. A-Able Rents Co.*, 101 Ohio App.3d 20, 654 N.E.2d 1315 (8th Dist. 1995); *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991); *Lutz v. Chitwood*, 337 B.R. 160 (Bankr. S.D. Ohio 2005) (applying Ohio law). As noted by one author, "the vicarious liability of an employer for torts committed by employees should not be confused with the liability an employer has for his own torts. An employer whose employee commits a tort may be liable in his own right for negligence in hiring or supervising the employee * * * [b]ut that is not vicarious liability." Kenneth S. Abraham, *The Forms and Functions of Tort Law*, 2nd Ed. 166, (2002).

{¶50} Accordingly, a church may be held liable for both the negligence of its employees who are acting in the scope of their employment as well as their own negligence. *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). Further, courts examining causes of action for negligent hiring, retention, supervision, or promotion, analyze them separately from respondeat superior or vicarious liability causes of action, which require a scope of employment analysis. See *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991); *Clifford v. Licking Baptist Church*, 5th Dist. Licking No. 09 CA 0082, 2010-Ohio-1464; *DiPietro v. Lighthouse Ministries*, 159 Ohio App.3d 766, 2005-Ohio-639, 825 N.E.2d 630 (10th Dist.). While an employer may be held vicariously liable for acts of their employees in the scope of the employment, Ohio courts have generally held an intentional tort such as sexual assault or rape, "which in no way facilitates or promotes the employer's business, is so far outside the scope of employment that employers should not be held liable for such acts under the doctrine of

respondeat superior or vicarious liability." *Stephens v. A-Able Rents Co.*, 101 Ohio App.3d 20, 654 N.E.2d 1315 (8th Dist. 1995).

**{¶51}** In this case, as made clear by the trial court's original judgment entry and amended judgment entry on summary judgment, the only cause of action submitted to the jury was negligence by Delaware Grace in hiring, retaining, or supervising Williams, or in recommending, promoting, and supporting his hiring and retention by Sunbury. The trial court granted summary judgment to Delaware Grace on Simpkins' cause of action for respondeat superior for the actions of Williams while in the scope of his employment. As noted above, unlike in a respondeat superior or vicarious liability cause of action, there is no requirement to prove in Simpkins' negligent hiring, retention, promotion, support, recommendation, or supervising cause of action that Williams' conduct occurred within the scope of employment. The only cause of action submitted to the jury was based on Delaware Grace's own independent negligence. Accordingly, we find the trial court erred in declining to provide the apportionment instruction and interrogatories based upon the vicarious liability exception contained in R.C. 2307.24 because the claim submitted to the jury was based not on vicarious liability but on claims Delaware Grace itself was negligent.

*Waiver of Affirmative Defense & Constitutionality of Statute*

**{¶52}** The trial court also declined to give the jury the apportionment instruction because it found that Delaware Grace did not timely raise R.C. 2307.22 as a defense and that R.C. 2307.23(C), which allows a defendant to raise R.C. 2307.22 as an affirmative defense at any time prior to trial, is unconstitutional. We disagree with the trial court.

{¶53} R.C. 2307.23(C) provides, in pertinent part that:

It is an affirmative defense for each party to the tort action from whom the plaintiff seeks recovery in this action that a specific percentage of the tortious conduct that proximately caused the injury or loss to person or property * * * is attributable to one or more persons from whom the plaintiff does not seek recovery in this action.  Any party to the tort action from whom the plaintiff seeks recovery in this action may raise an affirmative defense under this division at any time before the trial of the action.

{¶54} Pursuant to the liberal pleading requirements of Civil Rule 8, the pleadings of the parties to an action need only be in general terms.  A defendant's answer is subject to the same notice-pleadings standards as a plaintiff's complaint, and an affirmative defense is generally adequate as long as the plaintiff receives fair notice of the defense.  Civil Rule 8.

{¶55} In this case, the second defense in Delaware Grace's answer is that, "in the event that liability on the part of either of these Defendants is established [Delaware Grace or Anderson], each Defendant is liable for only that portion of Plaintiff's damages caused by his or her own proportionate share of fault."  Further, approximately two-and-a-half weeks before trial, Delaware Grace filed a "Notice of Intent to Seek Apportionment."  Based upon the notice pleading rules set forth in Civil Rule 8(C), Delaware Grace provided Simpkins with fair notice of the apportionment defense in its answer.  Further, even if we found the answer to be insufficient to raise the defense,

Delaware Grace raised the issue by filing its notice of intent several weeks prior to trial in accordance with R.C. 2307.23 which states the affirmative defense can be raised at any time before trial.

{¶56} The trial court also declined to give the apportionment instruction because it declared R.C. 2307.23 unconstitutional. The Ohio Supreme Court has noted that, "[d]eclaring a statute unconstitutional, sua sponte, without notice to the parties would be 'unprecedented' when neither party has raised a constitutional issue." *Smith v. Landfair,* 135 Ohio St.3d 89, 2012-Ohio-5692, 984 N.E.2d 1016.

{¶57} In this case, prior to the empaneling of the jury, Delaware Grace requested the trial court include in its jury instructions an instruction on apportionment of liability. The trial court indicated it would reserve its final ruling on the issue, but stated it felt the apportionment statute was not applicable in this case because it is a vicarious liability issue so Delaware Grace and Williams are treated as one person. Subsequently, near the end of the trial when there was a hearing regarding jury instructions and objections thereto, the trial court, for the first time and without it being raised by Simpkins, found R.C. 2307.23 directly conflicts with the rule that a trial judge has the discretion to determine whether a party can amend a pleading and thus is an unconstitutional violation of the Modern Courts Amendment, Ohio Constitution, Article IV, Section 5, as well as the Due Process Clause of the Ohio and U.S. Constitutions.

{¶58} We find the trial court erred when it sua sponte found R.C. 2307.23(C) unconstitutional without providing notice to the parties. Prior to declaring the statute unconstitutional, the trial court did not give the parties notice that it intended to consider the constitutionality of the statute. Where neither party raised a constitutional argument

before the court, it should not sua sponte declare a statute unconstitutional without providing parties notice of the court's intention and the opportunity to respond. *In re K.A.G.*, 12th Dist. Warren No. CA2012-10-101, 2013-Ohio-780.

**{¶59}** Based on the foregoing, we sustain Delaware Grace's third assignment of error and find the trial court erred in refusing to allow the jury to consider apportionment.

IV.

**{¶60}** Delaware Grace next argues the trial court erred in failing to grant its motion for new trial because future economic loss was not supported by the evidence as Simpkins testified she did not have current plans to seek mental health treatment.

**{¶61}** Civil Rule 59(A) permits a new trial to be granted to a party on all or part of the issues based upon any one of the nine enumerated grounds. Civil Rule 59(A)(6) allows for a new trial when the "judgment is not sustained by the weight of the evidence." When considering a motion for a new trial pursuant to Civil Rule 59(A)(6), a court must weigh the evidence and pass on the credibility of the witnesses. A new trial will not be granted where the verdict is supported by competent, substantial, and apparently credible evidence. *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201. Because a trial court is in the best position to decide issues of fact, it is vested with broad discretion in ruling upon motions for new trial based upon Civil Rule 59(A)(6). *Id.* Our standard of review on a motion for new trial is abuse of discretion. Civil Rule 59. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error or law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶62}** "A plaintiff's claim for future medical expenses must be supported by evidence that reasonably establishes the amount likely to be incurred for the future medical treatment." *Bowers v. Next Generation Films, Inc.*, 5th Dist. Richland No. 08 CA 43, 2009-Ohio-1153. If an alleged injury is subjective in character, the claimant must present expert evidence as to future pain and suffering or permanence. *Id.* However, without evidence in the record reflecting that the jury was wrongfully influenced or that the award was manifestly excessive or inadequate, a reviewing court may not interfere with a jury's verdict on damages. *Nevins v. Ohio Dept. of Transp*, 132 Ohio App.3d 6, 724 N.E.2d 433 (10th Dist. 1998), citing *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 635 N.E.2d 331 (1994).

**{¶63}** In this case, Smalldon testified that Simpkins would need weekly counseling for one year, monthly counseling for five years, and ten times per year in the foreseeable future after that. Smalldon stated counseling costs $200 per session. Further, Smalldon testified Simpkins should see a psychiatrist five times per year for ten years at $300 per session. Delaware Grace filed a motion for new trial or a remittitur to the amount testified by Smalldon ($60,000) rather than the $150,000 in future economic loss awarded by the jury. The trial court denied the motion for new trial, but granted the remittitur in the amount of $60,000.

**{¶64}** We find the trial court did not abuse its discretion in denying the motion for new trial and instead granting the remittitur. The testimony by Smalldon was evidence that reasonably establishes the amount likely to be incurred for future medical treatment. Simpkins did not testify she would never seek out mental health counseling

in the future and thus her testimony does not completely preclude an award for future economic loss.  Delaware Grace's fourth assignment of error is overruled.

Cross-Assignment of Error I

{¶65} Simpkins argues the trial court erred in reducing the jury verdict for noneconomic damages as R.C. 2315.18 is unconstitutional as applied.  In *Arbino v. Johnson*, the Ohio Supreme Court held that R.C. 2315.18 does not violate the right to a trial by jury, the right to a remedy, the right to an open court, the right to due process of law, the right to equal protection of the laws, or the separation of powers, and is therefore constitutional on its face.  116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420.  In a facial constitutional challenge, the challenger must establish that no set of circumstances exists under which the act would be valid and requires proof beyond a reasonable doubt.  *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898.

{¶66} A party raising an as applied constitutional challenge alleges that "the application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional."  *Yajnik v. Akron Dept. of Health, Housing Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632.  "The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative."  *Id.*  To prevail on a constitutional challenge to the statute as applied, the challenger has the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statute unconstitutional when applied to those facts.  *Groch v. General Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377.  The Ohio Supreme Court defined the

standard of clear and convincing evidence as the "measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954).

**{¶67}** In this case, Simpkins makes substantially the same arguments as set forth by the plaintiff in *Arbino*, but instead of arguing R.C. 2315.18 is facially unconstitutional, argues that the statute is unconstitutional as applied to her.

**{¶68}** When the constitutionality of legislation is in question, we must interpret the applicable constitutional provisions and "acknowledge that a court has nothing to do with the policy or wisdom of a statute" as this is the exclusive province of the legislative branch of government. *State ex rel. Ohio Congress Parents & Teachers v. State Board of Education*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148.

*Right to Trial by Jury*

**{¶69}** Simpkins argues R.C. 2315.18, as applied to her, is unconstitutional because it deprives a minor victim of sexual abuse from having his or her damages fully assessed by the jury. We disagree.

**{¶70}** In *Arbino*, the Ohio Supreme Court found as long as the fact-finding process is not intruded upon and the resulting findings of fact are not ignored or replaced by another body's findings, awards may be altered as a matter of law and the right to a jury trial does not extend to the determination of questions of law. 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420. Accordingly, a court does not violate a plaintiff's right to trial by jury when it applies a statutory limit on noneconomic damages

to the facts found by the jury.  *Id; Oliver v. Cleveland Indians Baseball Co. Ltd. Partnership*, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205.

{¶71}  In this case, the jury made its findings of fact and the trial court, as a matter of law, applied the limits imposed by R.C. 2315.18 to the findings of fact after they were determined by the jury and did not alter the findings of fact themselves. Simpkins has not demonstrated that the application of R.C. 2315.18 in this case affects her differently than any other tort claimant whose damages are limited by the statute with regards to the right to a jury trial. There is thus no clear and convincing evidence that the statute unconstitutionally violates her right to a jury trial.

*Open Courts and Right to a Remedy*

{¶72}  Simpkins contends that, as applied, R.C. 2315.18 violates her right to a remedy or the "open courts" provision of the Ohio Constitution.  We disagree.

{¶73}  In *Arbino*, the plaintiff argued R.C. 2315.18 violates the right to a remedy and the open courts provision because it denies any recovery for noneconomic damages for the increment of harm above $250,000.  The Ohio Supreme Court determined that the limits do not wholly deny a person remedy for their injuries and that injured persons not suffering the catastrophic injuries in R.C. 2315.18(B)(3) may still recover full economic damages, up to $350,000 in noneconomic damages, and punitive damages; and that these available remedies are "meaningful" remedies under the Constitution.  116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420.

{¶74}  In this case, Simpkins is not denied a meaningful remedy as she is entitled to recover economic damages and $350,000 in noneconomic damages.  While the statute prevents her from obtaining the same dollar figure she may had received prior to

the effective date of the statute, it does not foreclose upon her ability to pursue a claim at all or nor completely obliterates the entire jury award. Further, Simpkins has failed to demonstrate the application of R.C. 2315.18 affects her right to "open courts" differently than it affects other tort claimants whose damages are limited by the statute. Accordingly, there is not clear and convincing evidence the statute unconstitutionally violates her right to a remedy.

*Due Process*

{¶75} Simpkins contends R.C. 2315.18 violates her right to due process because though her injuries were catastrophic, they were not physical injuries and thus she is denied due process of law because she is not entitled to utilize the exceptions listed in R.C. 2315.18(B)(3) for emotional or mental injuries.

{¶76} As considered in *Arbino,* R.C. 2315.18 neither restricts nor denies a fundamental right and thus due process issues must be analyzed under a rational basis test and the constitutionality of the statute must be upheld if it "bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable and arbitrary." 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420. In *Arbino*, the court determined R.C. 2315.18 bears real and substantial relation to the general welfare of the public and the statute is not arbitrary or unreasonable as the statute alleviates the concern about imposing the cost solely on those most severely injured because it allows for limitless noneconomic damages for those suffering catastrophic injuries. *Id.* The Ohio Supreme Court reasoned that the General Assembly, in deciding that exceptions would only apply in certain

circumstances, made a policy choice that noneconomic damages exceeding set amounts are not in the best interest of the citizens of Ohio. *Id.*

**{¶77}** Under Ohio law, a tort plaintiff may recover unlimited compensatory damages for noneconomic losses if the plaintiff has sustained either "permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system," or "permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities." R.C. 2315.18(B)(3).

**{¶78}** We find there is not clear and convincing evidence that the damages cap is unreasonable or arbitrary as to Simpkins. While there may be nonphysical injuries the effects of which approximate those listed in R.C. 2315.18(B)(3), that is not what the evidence shows in this case. Though Smalldon testified Simpkins has post traumatic stress disorder and low grade depression, there is no suggestion that the effect of these injuries approximates the effect of a permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, or that her emotional injury permanently prevents her from being able to independently care for herself and perform life-sustaining activities. Simpkins testified she is afraid of the dark, sometimes has anxiety, and has some trust issues with men. However, after the incident, Simpkins played basketball in high school and college, got good grades in college, is currently employed full-time, has not sought or participated in mental health treatment or counseling since 2008, and does not have current plans to seek treatment. Thus, the evidence shows that she is able to independently care for herself and perform life-sustaining activities. Accordingly, Simpkins failed to present clear and convincing evidence of a presently

existing set of facts such that R.C. 2315.18 violates her due process rights when applied to those facts.

*Equal Protection*

**{¶79}** Simpkins contends R.C. 2315.18 violates her right to equal protection because it is unreasonable and arbitrary to create two classes of victims based upon those suffering from physical injury versus minor victims of sexual assault suffering from permanent, non-physical, catastrophic injuries without significant economic loss.

**{¶80}** In *Arbino*, the Court determined R.C. 2315.18 is facially neutral and thus the statute denies equal protection only if the General Assembly lacked any reasonable justification for its enactment and if it is not rationally related to a legitimate government purpose. 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420. The rational basis test requires that a statute be upheld if it is rationally related to a legitimate government purpose even if its classifications are not precise. *Id.* The Court stated that though the statute treats those with lesser injuries differently from those most severely injured, R.C. 2315.18 is rationally related to the legitimate state interest of making sure Ohio has a fair, predictable system of civil justice that preserves the rights of those who have been harmed by negligent behavior while curbing the number of frivolous lawsuits. *Id.* As noted by the Ohio Supreme Court, while noneconomic damage limits may or may not be the best way to address the perceived problems with the inherent subjectability and difficulty in evaluating noneconomic awards, the court is not the forum in which to second-guess such legislative choices. *Id.* The Court determined the distinctions the legislature drew in refusing to limit certain injuries contained in R.C. 2315.18(B)(3) while limiting other injuries were rational and based on the conclusion that the injuries

covered by the exceptions offered more concrete evidence of noneconomic damages and thus calculation of those damages poses a lesser risk of being tainted by improper external considerations.  *Id.*

**{¶81}** Simpkins has failed to present clear and convincing evidence that the damages caps is unreasonable or arbitrary as applied to her with regards to equal protection.  As discussed above, while there may be nonphysical injuries the effects of which approximate the effect of a permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, or permanently prevents a plaintiff from begin able to independently care for herself and perform life-sustaining activities, that is not what the evidence shows in this case.

**{¶82}** Accordingly, since Simpkins has shown that she suffered a permanent, non-physical injury, the issue is whether R.C. 2315.18 violates equal protection by capping her damages but not capping the noneconomic damages of a plaintiff who has suffered from one of the physical conditions in R.C. 2315.18(B)(3).  This question was answered by the Ohio Supreme Court in *Arbino* when it determined that the distinction between those with one of the physical conditions in R.C. 2315.18(B)(3) (those with the most severe injuries) and those without one of those conditions (those with lesser injuries) was rationally related to a legitimate government purpose and was grounded on a reasonable justification.  116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420.  Specifically, that this distinction was rationally related to the General Assembly's stated goals that tangible injuries represent more concrete evidence of noneconomic damages and thus calculation of those damages poses a lesser risk of being tainted by improper

external considerations. *Id.* As stated in *Arbino*, the Ohio Supreme Court is not the proper forum in which to second-guess such legislative choices. *Id.*

**{¶83}** Based upon the foregoing, we find the trial court did not err in reducing the jury verdict for noneconomic damages as R.C. 2315.18 is not unconstitutional as applied to Simpkins. Simpkins' first assignment of error is overruled.

Cross-Assignment of Error II

**{¶84}** Simpkins argues that the question of whether Delaware Grace's conduct warranted an award of punitive damages is an issue for the trier of fact when considering the evidence and thus the trial court erred in granting summary judgment on punitive damages. We agree.

**{¶85}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

**{¶86}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review

the matter de novo.  *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

**{¶87}** The award of punitive damages in tort actions is currently governed by Ohio statute.  R.C. 2315.21 provides that damages are not recoverable from a defendant in a tort action unless the actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that the defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.  R.C. 2315.21(C)(1).  The Ohio Supreme Court defines malice for the purposes of punitive damages as, "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of another person that has a great probability of causing substantial harm."  *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987).  "Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required."  *Id.* Only the second type of malice articulated in *Preston* is applicable in this case.

**{¶88}** Punitive damages are recoverable in a negligent hiring, supervision, or retention case.  *A. Doe v. First Presbyterian Church (USA)*, 126 Ohio App.3d 358, 710 N.E.2d 367 (5th Dist. 1998); *Stephens v. A-Able Rents Co.*, 101 Ohio App.3d 20, 654 N.E.2d 1315 (8th Dist. 1995).  Even where a plaintiff proves a claim of negligent hiring, supervision, or retention, the plaintiff must establish malice (as defined above) before he is entitled to recover punitive damages.  *Id.*

**{¶89}** In this case, the trial court granted summary judgment on punitive damages based upon the Ross County ruling that punitive damages could not be

established because the actions of Delaware Grace were not foreseeable. However, in its subsequent, clarified, ruling, the trial court stated that, "to the extent that any party construes the Ross County decision as finding no factual issues regarding the Delaware church's ability to anticipate or foresee [Williams'] misconduct, this Court declines to accept or follow that ruling." Accordingly, the trial court specifically allowed the jury to determine foreseeability and punitive damages should not have been precluded on that basis.

{¶90} Delaware Grace argues there is no evidence from which a jury could award punitive damages because there is no evidence of conscious disregard for Simpkins' rights and safety. We disagree and find that reasonable minds could differ on whether Delaware Grace's conduct demonstrated a conscious disregard for Simpkins' rights and safety having a greater probability of substantial harm such that the issue of punitive damages may be submitted to the jury. See *A. Doe v. First Presbyterian Church (USA)*, 126 Ohio App.3d 358, 710 N.E.2d 367 (5th Dist. 1998). In Brown and Stotz's depositions, they testified that the Delaware Grace officials at the meeting, including the senior pastor and someone from the board of elders, made light of the incident. Stotz's affidavit provides that she heard a Delaware Grace official state they should "keep things silent to protect our brother." Gill was the senior pastor and member of the board of elders and did not make a report of the Brown incident and placed nothing in Williams' file regarding the incident. Anderson, a senior pastor and a member of the elder board, knew about the Weixel incident and also knew that Williams continued to work with young women at the church. Underwood stated he would not have supported Williams as pastor at Sunbury if he would have known about the

incidents.  Boham was told by Gill not to discuss an incident between Williams and staff members that she felt might have been inappropriate.

{¶91}  Accordingly, we find a genuine issue of material fact exists as to whether Delaware Grace showed a conscious disregard for the rights and safety of Simpkins that has a great probability of causing substantial harm.  Simpkins' second assignment of error is sustained.

Cross-Assignments of Error III and IV

{¶92}  Simpkins argues the trial court erred in finding that she suffered a single "injury or loss" for purposes of R.C. 2315.18 because she suffered two distinct occurrences.  We disagree.

{¶93}  R.C. 2315.18(A)(5) defines "occurrence" as "all claims resulting from or arising out of any one person's bodily injury."  R.C. 2315.18(B)(2) limits noneconomic damages  "for each occurrence that is the basis of that tort action."  Unlike the case cited by Simpkins in support of her argument in which numerous sexual assaults throughout childhood were found to be separate incidents for the purposes of statute of limitations, *Madvad v. Russell*, 9th Dist. Lorain No. 96CA006652, 1997 WL 760898, the oral and vaginal penetration in this case occurred within a short period of time, in a confined geographic space, and without any intervening factors.  The testimony of Smalldon supports the position that there is one indivisible injury as he testified that Simpkins' post-traumatic stress disorder is the direct result of the incident with Williams and he does not distinguish between the two actions.

{¶94} Simpkins further argues even if Ohio's damage cap statute is constitutional, the trial court erred when it applied the cap to two separate "occurrences"

because it violates her rights under the "open courts" and "right to a remedy" provision of the Ohio Constitution. Simpkins asserts that the *Arbino* court upheld the constitutionality of the statute because R.C. 2315.18 operates as a limitation on damages, not a complete denial of a remedy to an injured person.

{¶95} Simpkins' argument assumes that she sustained two separate incidents and is not compensated for one of them. However, as discussed above, this assumption is inconsistent with the evidence, as the oral and vaginal penetration occurred in one setting only a minute or so apart and Smalldon's testimony did not differentiate their effect on Simpkins. This is a single course of wrongful conduct at the same time and place and there is no evidence Simpkins suffered separate, different, or additional damage from any separate part of the sexual assault.

{¶96} Accordingly, the trial court did not err in determining a single cap applied for purposes of R.C. 2315.18. Simpkin's fourth cross-assignment of error is overruled.

Cross-Appellant's Assignment of Error V

{¶97} Simpkins argues the trial court erred in applying the damage cap in R.C. 2315.18 because R.C. 2315.18 conflicts with R.C. 2307.60, which provides that, "anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically exempted by law * * *." We disagree.

{¶98} R.C. 2307.60 does not establish a separate cause of action and is simply a codification of the Ohio common law rule that a civil action is not merged into a criminal prosecution for the same acts that form the basis for the civil action. *McNichols v. Reinnicker*, 5th Dist. No. 2002 AP 04 0026, 2002-Ohio-7215. "It is a well-settled rule of statutory interpretation that statutory provisions be construed together and the

Revised Code be read as an interrelated body of law." *Summerville v. City of Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522. Pursuant to R.C. 1.51, "[i]f a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both." Here, we find that the statutes can be construed so that effect is given to both as R.C. 2307.60 does not create any substantive rights. Thus, no conflict exists between R.C. 2307.60 and R.C. 2315.18 and cross-appellant's fifth assignment of error is overruled.

{¶99} Based on the foregoing, we affirm in part and reverse and remand in part the judgment entries of the Delaware County Common Pleas Court. Delaware Grace's first, second, and fourth assignments of error are overruled. Delaware Grace's third assignment of error is sustained. Simpkins' first, third, fourth, and fifth assignments of error are overruled. Simpkins' second assignment of error is sustained.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur