[Cite as *Kingston Mound Manor I. v. Keeton*, 2019-Ohio-3260.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

KINGSTON MOUND MANOR I,   :
                                       :        Case No. 18CA15

    Plaintiff-Appellee,     :

                                         :

    vs.                          :        <u>DECISION AND JUDGMENT</u>
                                       :        <u>ENTRY</u>

CAROLYN KEETON,        :

                                         :

    Defendant-Appellant.    :
_____

APPEARANCES:

Sara L. Rose and Mark M. McCarthy, Sara L. Rose, LLC, Pickerington,
Ohio and Gary D. Kenworthy, Kenworthy Law Office, Circleville, Ohio, for
Appellee.

Kristen Finzel Lewis and Baylee Butler, Southeastern Ohio Legal Services,
Chillicothe, Ohio, for Appellant.
_____

Smith, P. J.

{¶1} This is an appeal from a Pickaway County Court of Common
Pleas judgment entry dismissing Appellant's counterclaim for failure to state
a claim. On appeal, Appellant, Carolyn Keeton, contends the trial court
erred when it dismissed her counterclaims for violation of the Fair Housing
Act, codified in 42 U.S.C. 3601, et seq., and the Ohio Civil Rights Act,
codified in R.C. 4112, et seq. Upon review, we find no merit to Appellant's

arguments.  Accordingly, we overrule her sole assignment of error and affirm the judgment of the trial court.

FACTS

{¶2} The underlying matter began with the January 18, 2018, filing of a complaint in forcible entry and detainer by Appellee, Kingston Mound Manor I, against Appellant, Carolyn Keeton, in the Circleville Municipal Court, after Appellant stopped paying rent.  The eviction action contained claims for possession and money damages.  Appellee filed her answer and counterclaims on February 26, 2018, alleging sex-based housing discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq. and the Ohio Civil Rights Act, R.C. 4112 et seq.  Upon Appellee's request, the case was certified to the Pickaway County Court of Common Pleas.

{¶3} Appellee's counterclaim for sex-based housing discrimination stemmed from an allegation that Chad Workman, allegedly a maintenance employee of Appellee, groped Appellant, made sexually explicit remarks to her, forced her to perform sexual acts, and then threatened her by telling her that if word got out about the incident, it would not be good for her.  The counterclaim alleged these acts occurred as part of a single incident that took place while Mr. Workman was in Appellant's apartment installing window blinds, approximately eight months before the eviction action was filed.

Appellant further noted in her counterclaim that Mr. Workman had a master key to all apartments, including hers.  Appellee filed an answer admitting Mr. Workman possessed a master key and that he was an employee.[1]  The parties dispute on appeal whether the counterclaims alleged claims based upon direct or vicarious liability, or both.

{¶4} Thereafter, Appellee filed a motion to dismiss the counterclaims for failure to state a claim, in accordance with Civ.R. 12(B)(6).  Appellant filed a lengthy memorandum contra the motion to dismiss.  Over the objection of Appellant, the trial court dismissed her claims for failure to state a claim in accordance with Civ.R. 12(B)(6) on June 18, 2018.  In dismissing Appellant's counterclaims, the trial court construed the claims as being ones for vicarious liability only, based upon the doctrine of respondeat superior. The trial court found, in part, that "there [was] no way to characterize the alleged assault that would bring it within the scope of employment."  The trial court further found that the incident could not be "described as calculated to facilitate or promote the business for which the maintenance worker was employed."

---

[1] On appeal, Appellee disputes that it admitted Mr. Workman was its employee and claims that he was, in fact, not its employee.  Our review of the record indicates Appellee appears to have admitted Mr. Workman was its employee in its answer to Appellant's counterclaim.  Regardless, however, for purposes of our review of the trial court's ruling on the motion to dismiss for failure to state a claim, we must presume all factual allegations contained in the counterclaim are true.  Thus, we presume to be true the allegation that he was an employee.

{¶5} Appellee subsequently filed a motion for summary judgment on the issue of damages, which the trial court granted in part. The trial court reserved, however, the right to hear evidence and arguments regarding the cleaning costs and trash removal. Then, on October 10, 2018, Appellee appeared before the trial court and orally withdrew its remaining claims. The trial court filed a judgment entry the same day dismissing the remaining claims. It is from that final order that Appellant brings her timely appeal, setting forth a single assignment of error for our review.

## ASSIGNMENT OF ERROR

I.    THE PICKAWAY COUNTY COURT OF COMMON PLEAS
      ERRED WHEN IT DISMISSED APPELLANT'S
      COUNTERCLAIMS FOR VIOLATION OF THE FAIR HOUSING
      ACT, 42 U.S.C. 3601, ET SEQ. AND OHIO CIVIL RIGHTS ACT,
      R.C. 4112 ET SEQ.

{¶6} Appellant contends the trial court erred when it dismissed her counterclaims for violation of the Fair Housing Act and Ohio Civil Rights Act. Appellant raises two arguments under her sole assignment of error. First, Appellant contends that reviewed under an aided-by-agency standard for vicarious liability in sexual harassment claims, she stated a claim against Appellee for violation of the Fair Housing Act. Second, Appellant contends she stated a claim against Appellee for violation of the Fair Housing Act and Ohio Civil Rights Act based on a negligence theory of liability. Appellee

contends that because Appellant failed to demonstrate the maintenance worker at issue had any supervisory or managerial authority, or that any tangible housing action was taken against her, she has failed to demonstrate any violation of the Fair Housing Act. Appellee also argues the trial court correctly dismissed Appellant's vicarious liability claims because the actions of Mr. Workman were outside the scope of his employment. Further Appellee argues that Appellant's counterclaim failed to allege a negligence claim in the form of a direct liability claim for negligent hiring and/or supervision of the maintenance worker. While Appellee disputes that Mr. Workman was its employee on appeal, it concedes that, for purposes of considering the Civ.R. 12(B)(6) motion, it is appropriate to accept the truth of Appellant's claim that Mr. Workman was Appellee's employee. We begin with a look at our standard of review, as well as a general overview of the Fair Housing Act and Ohio Civil Rights Act, as they relate to sexual harassment claims as a discriminatory housing practice in the context of fair housing.

**Standard of Review**

{¶7} A review of the record indicates the trial court dismissed Appellant's complaint for failure to state a claim in accordance with Civ.R. 12(B)(6), upon the motion of Appellee. Because it presents a question of

law, we review a trial court's decision regarding a motion to dismiss independently and without deference to the trial court's determination. See *Roll v. Edwards*, 156 Ohio App.3d 227, 2004–Ohio–767, 805 N.E.2d 162, ¶ 15 (4th Dist.); *Noe v. Smith*, 143 Ohio App.3d 215, 218, 757 N.E.2d 1164 (4th Dist. 2000).[2] "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). A trial court may not grant a motion to dismiss for failure to state a claim upon which relief may be granted unless it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus; see also *Taylor v. London*, 88 Ohio St.3d 137, 139, 723 N.E.2d 1089 (2000).

{¶8} Furthermore, when considering a Civ.R. 12(B)(6) motion to dismiss, the trial court must review only the complaint, accepting all factual allegations as true and making every reasonable inference in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988); *Estate of Sherman v. Millhon*, 104 Ohio App.3d 614,

---

[2] Here, however, we are addressing the claims set forth in Appellant's counterclaim, rather than complaint.

617, 662 N.E.2d 1098 (10th Dist.1995); see also *JNS Ents., Inc. v. Sturgell*, 4th Dist. Ross No. 05CA2814, 2005–Ohio–3200, ¶ 8. The court, however, need not presume the truth of legal conclusions that are unsupported by factual allegations. *McGlone v. Grimshaw*, 86 Ohio App.3d 279, 285, 620 N.E.2d 935 (4th Dist.1993); citing *Mitchell* at 193.

{¶9} We further note that under the Ohio Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the party is entitled to relief." Civ.R. 8(A)(1). Civ.R. 8(E) further directs that averments contained in a pleading be simple, concise, and direct. Accordingly, "Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity." *Cincinnati v. Beretta U.S.A. Corp.,* 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29. We observe, however, that " '[i]n a few carefully circumscribed cases,' " a plaintiff must " 'plead operative facts with particularity.' " *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 109, 647 N.E.2d 799 (1995); quoting *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991); citing *Mitchell*, *supra* (employee's intentional tort claim against employer) and *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991) (negligent hiring claim against religious institution); see also

S.Ct.Prac.R. 12.02(B)(1) (complaints in original actions filed in the Supreme Court); Civ.R. 9(B) (claims of fraud or mistake).

{¶10} Moreover, a plaintiff is not required to plead the legal theory of the case at the pleading stage and need only give reasonable notice of the claim. *State ex rel. Harris v. Toledo*, 74 Ohio St.3d 36, 656 N.E.2d 334 (1995); see *York*, *supra*, at 145 (stating that complaint need not contain more than "brief and sketchy allegations of fact to survive a motion to dismiss under the notice pleading rule"). Thus, "a plaintiff is not required to prove his or her case at the pleading stage." *York* at 145; *accord State ex rel. Leneghan v. Husted*, 154 Ohio St.3d 60, 2018-Ohio-3361, 110 N.E.3d 1275, ¶ 16 (citing *York* and noting that party "not required to prove her case at the pleading stage").

## Fair Housing Act of 1968/Title VIII

{¶11} The Fair Housing Act was originally enacted in 1968 as part of Title VIII of the Civil Rights Act of 1968. It "prohibits harassment in housing and housing-related transactions because of race, color, religion, sex, national origin, disability, and familial status, just as Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.) (Title VII) prohibits such harassment in employment." Fed. Reg. 63054, Executive Summary. The Fair Housing Act is codified in 42 U.S.C. §3601 et seq. 42 U.S.C. §3601

declares that "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." The Fair Housing Act further provides in 42 U.S.C. § 3608(a) that "[t]he authority and responsibility for administering this Act shall be in the Secretary of Housing and Urban Development." Additionally, the Act provides in 42 U.S.C. 3614(a) titled "Rules to Implement Title" as follows:

> The Secretary may make rules (including rules for the collection, maintenance, and analysis of appropriate data) to carry out this title. The Secretary shall give public notice and opportunity for comment with respect to all rules made under this section.

{¶12} The Code of Federal Regulations (hereinafter "C.F.R.") is the codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government.

{¶13} As noted in 81 Fed. Reg. 63054, 24 CFR Part 100 provides for "Quid Pro Quo and Hostile Environment Harassment and Liability for Discriminatory Housing Practices Under the Fair Housing Act." 24 C.F.R. Subpart H, §100.600 defines both quid pro quo and hostile environment harassment in the context of fair housing and provides as follows:

(a) *General.* Quid pro quo and hostile environment harassment because of race, color, religion, sex, familial status, national origin or handicap may violate sections 804, 805, 806, or 818 of the Act, depending on the conduct. The same conduct may violate one or more of these provisions.

(1) *Quid pro quo harassment.* Quid pro quo harassment refers to an unwelcome request or demand to engage in conduct where submission to the request or demand, either explicitly or implicitly, is made a condition related to: The sale, rental or availability of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision of services or facilities in connection therewith; or the availability, terms or conditions of a residential real-estate-related transaction. An unwelcome request or demand may constitute quid pro quo harassment even if a person acquiesces in the unwelcome request or demand.

(2) *Hostile environment harassment.* Hostile environment harassment refers to unwelcome conduct that is sufficiently severe or pervasive as to interfere with: The availability, sale, rental, or use or enjoyment of a dwelling; the terms, conditions,

or privileges of the sale or rental, or the provision or enjoyment of services or facilities in connection therewith, or the availability, terms or conditions of a residential real estate-related transaction. *Hostile environment harassment does not require a change in the economic benefits, terms, or conditions of the dwelling or housing-related services or facilities, or of the residential real-estate transaction.*[3]

(i) *Totality of circumstances.* Whether hostile environment harassment exists depends upon the totality of the circumstances.

* * *

(ii) *Title VII affirmative defense.* The affirmative defense to an employer's vicarious liability for hostile environment harassment by a supervisor under Title VII of the Civil Rights Act of 1964 does not apply to cases brought pursuant to the Fair Housing Act.[4]

---

[3] Although Appellee argues Appellant was not sexually harassed and/or did not suffer sex-based discrimination because no tangible housing action was taken against her, this provision indicates a hostile housing environment claim does not require a tangible housing action to have occurred.

[4] As explained in *Edwards v. Ohio Institute of Cardiac Care, et al.*, 170 Ohio App.3d 619, 2007-Ohio-1333, 868 N.E.2d 721, ¶ 21, in an employment based claim for sexual harassment, "[i]f the sexual harassment by the supervisor did not result in a tangible employment action, then the employer may assert an affirmative defense." As set forth, however, a housing provider may not assert this affirmative defense, even when a tangible housing action has not occurred.

* * *

(c) *Number of incidents*.  A single incident of harassment because of race, color, religion, sex, familial status, national origin, or handicap may constitute a discriminatory housing practice, where the incident is sufficiently severe to create a hostile environment, or evidences a quid pro quo. (Emphasis added).

Thus, the rules promulgated by the Director of the Department of Housing and Urban Development state that sexual harassment, both quid pro quo and hostile environment, constitute a "discriminatory housing practice" for purposes of the Fair Housing Act.

{¶14} 42 U.S.C. § 3602(f) defines "discriminatory housing practice" as "an act that is unlawful under section 3604, 3605, 3606, or 3617" of the U.S.C.  Appellant's counterclaim alleged violations of 42 U.S.C. §§ 3604(a) and (b) and 3617.  42 U.S.C. § 3604 provides, in pertinent part, as follows:

As made applicable by section 3603 of this title and except as exempted by section 3603(b) and 3607 of this title, it shall be unlawful –

(a)  To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or

otherwise make unavailable or deny, a dwelling to any person

because of race, color, religion, sex, familial status, or national

origin.

(b)  To discriminate against any person in the terms, conditions,

or privileges of sale or rental of a dwelling, or in the provision

of services or facilities in connection therewith, because of race,

color, religion, sex, familial status, or national origin.

42 U.S.C. §3617 further provides as follows:

It shall be unlawful to coerce, threaten, or interfere with any

person in the exercise or enjoyment of, or on account of his

having exercised or enjoyed, or on account of his having aided

or encouraged any other person in the exercise or enjoyment of,

any right granted or protected by section 3603, 3604, 3605 or

3606 of this title.

{¶15} 24 C.F.R. Part 100 also addresses liability for discriminatory

housing practices in §100.7 as follows:

(a) *Direct Liability*.  (1) A person is directly liable for:

(i) The person's own conduct that results in a discriminatory

housing practice.

(ii) Failing to take prompt action to correct and end a

discriminatory housing practice by that person's employee or

agent, where the person knew or should have known of the

discriminatory conduct.

* * *

(b) *Vicarious liability*.  A person is vicariously liable for a

discriminatory housing practice by the person's agent or

employee, regardless of whether the person knew or should

have known of the conduct that resulted in a discriminatory

housing practice, *consistent with agency law*.  (Emphasis

added).

{¶16} In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc, et al.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the United States Supreme Court noted that " '[t]he power of an administrative agency to administer a congressionally created . . . program necessarily requires formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' "  Quoting *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974).  Furthermore, the Court acknowledged that it had "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme

it is entrusted to administer, and the principle of deference to administrative interpretations." *Id.* at 834.

{¶17} In addition to the Fair Housing Act's language allowing for sex-based discrimination claims in the form of sexual harassment in the context of housing, federal courts have acknowledged the viability of these claims as well. See *Lofton v. Hinton*, N.D. Ohio No. 1:15CV00486, 2015 WL 4496214, *2 (July 22, 2015) ("It has long been held in this District, and subsequently in many others, that sexual harassment can be an actionable form of housing discrimination."); Citing *Shellhammer v. Lewallen*, 770 F.2d 167 (6th Cir.1985).

## Ohio Civil Rights Act

{¶18} The Ohio Civil Rights Act, codified as R.C. 4112, et seq., also prohibits sex-based discrimination in the fair housing context. There are several provisions in R.C. 4112 et seq. that are analogous to the provisions of 42 U.S.C. 3601 et seq. Specifically, Appellant's counterclaim alleged violations of R.C. 4112.02 which provides, in pertinent part, as follows:

It shall be an unlawful discriminatory practice:

* * *

(H) Subject to section 4112.024[5] of the Revised Code, for any person to do any of the following:

(1) Refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, military status, familial status, ancestry, disability, or national origin;

* * *

(4) Discriminate against any person in the terms or conditions of selling, transferring, assigning, renting, leasing, or subleasing any housing accommodations or in furnishing facilities, services, or privileges in connection with the ownership, occupancy, or use of any housing accommodations, including the sale of fire, extended coverage, or homeowners insurance, because of race, color, religion, sex, military status, familial status, ancestry, disability, or national origin or because of the racial composition of the neighborhood in which the housing accommodations are located;

---

[5] R.C. 4112.024 has no applicability to the present case.

* * *

(7) Print, publish, or circulate any statement or advertisement,

or make or cause to be made any statement or advertisement,

relating to the sale, transfer, assignment, rental, lease, sublease,

or acquisition of any housing accommodations, or relating to

the loan of money, whether or not secured by mortgage or

otherwise, for the acquisition, construction, rehabilitation,

repair, or maintenance of housing accommodations, that

indicates any preference, limitation, specification, or

discrimination based upon race, color, religion, sex, military

status, familial status, ancestry, disability, or national origin, or

an intention to make any such preference, limitation,

specification, or discrimination[.]

It appears 42 U.S.C. §3604(a) is analogous to R.C. 4112.02(H)(1), and 42

U.S.C. §3604(b) is analogous to R.C. 4112.02(H)(4).

**Vicarious Liability for violations of the Fair Housing Act**

{¶19} Appellant argues her counterclaim sufficiently pled claims for

both quid pro quo sexual harassment and hostile environment harassment

under the Fair Housing Act, when reviewed under an aided-by-agency

standard for vicarious liability.  Appellee responds by arguing that Appellant

is raising a new argument for the first time on appeal by arguing liability under an aided-by-agency theory, which is prohibited. However, this case was dismissed at an early stage of the proceedings. As noted above, a plaintiff is not required to plead the legal theory of the case at the pleading stage and need only give reasonable notice of the claim. *State ex rel. Harris v. Toledo*, *supra*; *York*, *supra,* at 145. As such, we conclude Appellant is not barred from making this argument on appeal.

{¶20} Appellee further argues that the manner in which Appellant's argument is phrased on appeal essentially concedes that the trial court correctly concluded she failed to demonstrate liability based upon traditional principles of vicarious liability under a scope-of-employment analysis. Appellant's argument on appeal is that although the trial court found there was no vicarious liability based upon a scope-of-employment analysis, liability was established under an aided-by-agency theory of vicarious liability. Thus, it does appear Appellant may have conceded the trial court reached the correct decision under a scope-of-employment analysis.

{¶21} Appellee further points out that Appellant only argues the trial court should have utilized an aided-by-agency analysis as to the Fair Housing claims and does not make the same argument regarding the Ohio Civil Rights Act claims. Appellee attributes this to the fact that the Supreme

Court of Ohio has expressly rejected the aided-by-agency theory of liability

and thus, the argument would fail in relation to the claims brought under the

Ohio Civil Rights Act.  See *Groob v. Key Bank*, 108 Ohio St.3d 348, 2006-

Ohio-1189, 843 N.E.2d 1170.  As will be discussed more fully below, we

agree with Appellee that Appellant limits her aided-by-agency theory of

liability to the context of the Fair Housing Act.

{¶22} We now begin with a review of the traditional vicarious

liability principles based upon the doctrine of respondeat superior involving

a scope-of-employment analysis, which is generally the law in Ohio, as

opposed to an aided-by-agency analysis.  The Supreme Court of Ohio has

explained as follows:

> The doctrine of respondeat superior is expressed in the
>
> Restatement of the Law 2d, Agency (1958) 481, Section
>
> 219(1), which states as follows: "A master is subject to liability
>
> for the torts of his servants committed while acting in the scope
>
> of their employment." Ohio law provides, "[i]t is well-
>
> established that in order for an employer to be liable under the
>
> doctrine of respondeat superior, the tort of the employee must
>
> be committed within the scope of employment.  Moreover,
>
> where the tort is intentional, * * * the behavior giving rise to

the tort must be "calculated to facilitate or promote the business for which the servant was employed * * *." (Citations omitted.) *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 58, 565 N.E.2d 584, 587. In general, "an intentional and willful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor. * * *" (Citations omitted.) *Vrabel v. Acri* (1952), 156 Ohio St. 467, 474, 46 O.O. 387, 390, 103 N.E.2d 564, 568. Stated otherwise, "an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Byrd*, *supra*, 57 Ohio St.3d at 59, 565 N.E.2d at 588.

*Osborne v. Lyles*, 63 Ohio St.3d 326, 329-330, 587 N.E.2d 825 (1992).

{¶23} The Court later explained in *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 20 that "[a]n agent who committed the tort is primarily liable for its actions, while the principal is merely secondarily liable." Citing *Losito v. Kruse*, 136 Ohio St. 183, 24 N.E.2d 705 (1940) and *Herron v. Youngstown*, 136 Ohio St. 190, 24 N.E.2d 708 (1940).

This is because "[t]he liability for the tortious conduct flows through the agent by virtue of the agency relationship to the principal." *Id.* Additionally, it is "axiomatic that for the doctrine of respondeat superior to apply, an employee must be liable for a tort committed in the scope of his employment." *Byrd v. Faber*, *supra*, at 58; citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 217, 527 N.E.2d 1235 (1988); see also *Simpkins v. Grace Brethren Church of Delaware*, 2014-Ohio-3465, 16 N.E.3d 687, ¶ 48 (5th Dist.).

{¶24} This Court likewise observed in *Ramey v. Mudd*, 154 Ohio App.3d 582, 2003-Ohio-5170, 798 N.E.2d 57, ¶ 18:

> For an employer to be liable for the tortious act of an employee
> under the doctrine of respondeat superior, the act must be
> committed within the scope of employment and, if an
> intentional tort, it must be calculated to facilitate or promote the
> employer's business or interest.  Citing *Browning v. Ohio State
> Hwy. Patrol*, 151 Ohio App.3d 798, 2003-Ohio-1108, 786
> N.E.2d 94, ¶ 60.

Further, " 'if the employee tortfeasor acts intentionally or willfully for his own personal purposes, the employer is not responsible, even if the acts are

committed while the employee is on duty.' " *Ramey* at ¶ 18; quoting *Caruso*

*v. State*, 136 Ohio app.3d 616, 621, 737 N.E.2d 563 (10th Dist. 2000).[6]

{¶25} In *Osborne v. Lyles*, *supra*, at 330, the Court explained that

although it is commonly recognized that the question of whether an

employee is acting within the scope of his or her employment is a question

of fact to be decided by a jury, when reasonable minds can come to but one

conclusion, it becomes a question of law.  Citing *Posin v. A.B.C. Motor*

*Court Hotel*, 45 Ohio St.2d 271, 344 N.E.2d 334 (1976) and *Mary M. v. Los*

*Angeles*, 54 Cal.3d 202, 213, 285 Cal.Rptr. 99, 105, 814 P.2d 1341 (1991);

citing *Perez v. Van Groningen & Sons, Inc.* (1986), 41 Cal.3d 962, 968, 227

Cal.Rptr. 106, 109, 719 P.2d 676, 679.  Thus, in Ohio it has generally been

held that an employer is not liable for the rape or sexual assault performed

by an employee, even if the employee was on duty at the time the act was

committed, because such an act is a clear departure from their scope of

employment.  *Osborne v. Lyles*, *supra*, at 330; *Simpkins* at ¶ 50; see also

*Peters v. Ashtabula Metropolitan Housing Authority*, 89 Ohio App.3d 458,

462, 624 N.E.2d 1088 (1993).  *Simpkins* also noted the general rule in Ohio

that: [w]hile an employer may be held vicariously liable for acts of their

---

[6] An intentional tort, like assault, is an act of malfeasance.  *Fiske v. U.S. Health Corp. of S. Ohio*, 4th Dist. Scioto No. 04CA2942, 2005-Ohio-1295, FN 4; citing Black's Law Dictionary (5th Ed.1979).

employees in the scope of the employment, Ohio courts have generally held an intentional tort such as sexual assault or rape, "which in no way facilitates or promotes the employer's business, is so far outside the scope of employment that employers should not be held liable for such acts under the doctrine of respondeat superior or vicarious liability." *Stephens v. A–Able Rents Co.*, 101 Ohio App.3d 20, 654 N.E.2d 1315 (8th Dist. 1995). *Simpkins* at ¶ 50.

{¶26} Appellant argues, however, that the trial court should have considered her claims under an aided-by-agency theory of vicarious liability, rather than scope of employment. This theory of liability is also set forth in Restatement (Second) of Agency §219 (1958). §219 provides, in pertinent part, as follows:

> (1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.
>
> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> * * *
>
> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, *or he*

*was aided in accomplishing the tort by the existence of the*

*agency relation*. (Emphasis added).

{¶27} In support of her argument, Appellant cites to comments by the Director of HUD referencing that an aided-by-agency analysis is appropriate when considering claims of sexual harassment under the Fair Housing Act. She also cites to several federal cases that utilized an aided-by-agency analysis to deny summary judgment motions involving allegations of sexual harassment in the context of fair housing.[7]  However, Appellant has cited no cases from the United States Sixth Circuit, nor has this Court been able to locate any binding cases that acknowledge or adopt the aided-by-agency theory of liability.  Further, although *Chevron*, *supra*, requires deference to the rulemaking authority of the Director of HUD, the rules promulgated by the Director simply require vicarious liability to be determined "consistent with agency law."  It is only in the comments section, not the actual rules, that the Director references aided-by-agency, or "aided in agency."  We have found nothing that requires this Court be bound by, or give deference to, the comments section of the Code of Federal Regulations, as contained in the Federal Register.

---

[7] Each of the federal cases cited by Appellant involved employees with not only maintenance duties, but also supervisory or managerial titles.  None of the cases cited by Appellant involved an employee who was simply a maintenance worker with no managerial authority.

{¶28} Therefore, in the absence of controlling authority mandating consideration of Appellant's claim under an aided-by-agency analysis, we believe we must adhere to the Supreme Court of Ohio's views on this issue. As set forth above, in *Groob v. Key Bank*, *supra*, the Supreme Court of Ohio expressly rejected the aided-by-agency theory of liability. In *Groob*, the Supreme Court stated "[t]his court has not adopted Section 219(2)(d), and we decline to do so here." *Groob* at ¶ 54 (Internal footnote omitted). The Court went to specifically hold as follows:

> We also hold that an employer is not liable under a theory of respondeat superior unless the employee is acting within the scope of her employment when committing a tort – merely being aided by her employment status is not enough. *Id.* at ¶ 58.

The Supreme Court of Ohio more recently reaffirmed the holding in *Groob* when it again stated in *Auer v. Paliath*, 140 Ohio St.3d 276, 2014-Ohio-3632, 17 N.E.3d 561, ¶ 21 that "[i]t is not enough that the agent's position with the principal's business simply aided her in committing the tort."

{¶29} In light of the foregoing Ohio case law, and lack of federal precedent requiring analysis under an aided-by-standard for vicarious liability, we decline to adopt that theory of liability here. Thus, we reject

Appellant's argument the trial court erred in dismissing her vicarious liability claims for violations of the Fair Housing Act when reviewed under an aided-by-agency standard. Further, we agree with Appellee's argument that Appellant abandoned any claim on appeal that the trial court's dismissal of her claim under a scope-of-employment analysis was erroneous. Assuming arguendo, however, that Appellant intended to preserve this argument, or did preserve this argument, in light of the foregoing case law we conclude this is one of those situations where the intentional and criminal actions of the employee in no way facilitated or promoted Appellee's business interests. Thus, any question regarding scope of employment was converted to a question of law, which the trial court properly resolved in favor of Appellee. Accordingly, this portion of Appellant's argument raised under her sole assignment of error is without merit.

## Direct Liability for violations of the Fair Housing Act and

## Ohio Civil Rights Act

{¶30} We next address Appellant's argument that her counterclaim set forth a negligence claim against Appellee for negligent hiring and/or supervision. Appellant argues on appeal that she sufficiently pled claims, under a notice-pleading standard, for negligent hiring and/or supervision under a direct liability theory. She makes this argument despite the fact that

both Appellee and the trial court construed the claims set forth in her

counterclaim as being based solely upon principles of vicarious liability,

under the doctrine of respondeat superior. For the following reasons, we

reject Appellant's argument that she sufficiently pled claims of negligence.

{¶31} In *Simpkins*, *supra*, claims were brought for negligent hiring,

retention and supervision, as well respondeat superior, based upon an

allegation that *Simpkins* was raped by a pastor. *Simpkins* at ¶ 2-3. The

*Simpkins* court began by explaining the difference between the direct

liability and vicarious liability claims as follows:

> In Ohio, negligent hiring, supervising, and retention are
>
> separate and distinct from torts from other theories of recovery
>
> such as negligent entrustment and respondeat superior and an
>
> employer can be held independently liable for negligently
>
> hiring, supervising, or retaining an employee. *Stephens v. A–*
>
> *Able Rents Co.*, 101 Ohio App.3d 20, 654 N.E.2d 1315 (8th
>
> Dist. 1995); *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584
>
> (1991); *Lutz v. Chitwood*, 337 B.R. 160 (Bankr.S.D.Ohio 2005)
>
> (applying Ohio law). As noted by one author, "the vicarious
>
> liability of an employer for torts committed by employees
>
> should not be confused with the liability an employer has for

his own torts. An employer whose employee commits a tort may be liable in his own right for negligence in hiring or supervising the employee * * * [b]ut that is not vicarious liability." Kenneth S. Abraham, The Forms and Functions of Tort Law, 2nd Ed. 166, (2002).

*Simpkins* at ¶ 49.

{¶32} "[N]egligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." 2 Restatement of the Law 2d, Torts (1965), Section 282. Negligence occurs when the defendant fails to recognize that he owes a duty to protect the plaintiff from harm and that failure proximately resulted in injury or damage to the plaintiff. *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 127, 247 N.E.2d 732 (1969); *Kauffman v. First–Central Trust Co.*, 151 Ohio St. 298, 306, 85 N.E.2d 796 (1949). The elements of a claim of negligence are: (1) the existence of a legal duty owing from the defendant to the plaintiff; (2) the defendant's breach of that duty; and (3) injury to the plaintiff proximately resulting from such failure. *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002–Ohio–4210, 773 N.E.2d 1018, ¶ 22; citing *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). To recover, a plaintiff must also prove damages proximately resulting from the breach.

*Horsley v. Essman*, 145 Ohio App.3d 438, 442, 2001–Ohio–2557, 763

N.E.2d 245; citing *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614

(1989).

{¶33} In order to prove a claim for negligent hiring, retention, or

supervision, a plaintiff is required to establish: 1) the existence of an

employment relationship; 2) the employee's incompetence; 3) the

employer's actual or constructive knowledge of such incompetence; 4) the

employee's act or omission causing the plaintiff's injuries; and 5) the

employer's negligence in hiring or retaining the employee as the proximate

cause of plaintiff's injuries.  *Simpkins Grace Brethren Church of Delaware*

at ¶ 40; citing *Clifford v. Licking Baptist Church*, 5th Dist. Licking No.

09CA0082, 2010-Ohio-1464; *Browning v. Ohio State Highway Patrol*, 151

Ohio App.3d 798, 2003-Ohio-1108, 786 N.E.2d 94; citing *Evans v. Ohio*

*State University*, 112 Ohio App.3d 724, 739, 680 N.E.2d 161 (1996); see

also *Zanni v. Stelzer*, 174 Ohio App.3d 84, 2007-Ohio-6215, 880 N.E.2d

967, ¶ 8; quoting *Collins v. Flowers*, 9th Dist. No. 04CA008594, 2005-

Ohio-3797; in turn quoting *Ruta v. Breckenridge-Remy Co.*, 6th Dist. Erie

No. E-80-39, 1980 WL 351648 (Dec. 12, 1980).  As explained in *Simpkins*,

these "are negligence-based torts which require proof of the basic elements

of negligence; and the elements as listed above 'correspond with the basic

elements of negligence—duty, breach, proximate cause, and damages.' "

*Simpkins* at ¶ 40; citing *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-

Ohio-5516, 861 N.E.2d 920 (10th Dist.); *Ball v. Stark*, 10th Dist. Franklin

No. 11AP–177, 2013-Ohio-106.

{¶34} Here, the parties dispute whether Appellant's alleged claims for

negligent hiring and/or supervision based upon a direct liability theory of

negligence fell under Ohio's general notice pleading rule, or whether such

claims had to be pled with particularity. In *Byrd v. Faber*, *supra*, at 61, the

Supreme Court of Ohio stated as follows regarding the specificity required

in pleading when bringing a claim for negligent hiring, which in *Byrd*,

involved a religious institution:

> In order to survive a Civ.R. 12(B)(6) motion to dismiss, a
> plaintiff bringing a negligent hiring claim against a religious
> institution must plead operative facts with particularity. See
> *Mitchell, supra*, at, 40 Ohio St.3d 194, 532 N.E.2d at 757
> (Douglas, J., concurring). Specifically, the plaintiff must plead
> facts which indicate that the individual hired had a past history
> of criminal, tortious, or otherwise dangerous conduct about
> which the religious institution knew or could have discovered
> through reasonable investigation. The mere incantation of the

elements of a negligent hiring claim, i.e., the abstract statement

that the religious institution knew or should have known about

the employee's criminal or tortious propensities, without more,

is not enough to enable a plaintiff to survive a motion to

dismiss for failure to state a claim.

The *Byrd* Court's reasoning that a negligent hiring claim against a religious institution must be pled with particularity was based, at least in part, upon the belief that the institution's internal policies were likely "infused with the religious tenets of the particular sect[.]" *Id.* The Court was concerned about "serious entanglement problems" under the First Amendment if the Court was required to assess the adequacy of the institution's standards. *Id.*

{¶35} Although we believe the reasoning in *Byrd* provides guidance and is instructive as to the pleading requirements regarding negligent hiring and/or supervision cases generally, it is unclear to this Court, despite voluminous research, whether a claim for negligent hiring and supervision must be pled with particularity when the employer is not a religious institution. Thus, we will analyze Appellant's counterclaim under Ohio's more lenient notice pleading standard, as set forth above.

{¶36} Appellant's answer and counterclaim contained three sections. The first section was the "Answer." The second section was titled

"Counterclaims" and the third section was titled "Claims." The counterclaims section stated Appellant was bringing an action for declaratory judgment and damages for discrimination in the rental of housing on the basis of sex, pursuant to the Fair Housing Act and the Ohio Civil Rights Act. Appellant further alleged Appellee was the owner and/or real estate management company managing Kingston Mound Manor Apartments, and that Chad Workman was employed by Appellee to work at Kingston Mound Manor I as a maintenance employee and had access keys to all apartments. The counterclaim section further described that Mr. Workman groped her, sexually assaulted her and then verbally threatened her that it "wouldn't be good" for her if he heard word of the incident "getting out."

{¶37} The counterclaim section went on to allege that "[u]pon information and belief, [Appellant] is not the only female tenant whom Mr. Workman sexually assaulted or harassed while an employee of Kingston Mound Manor Apartments." She further alleged that "Kingston Mound Manor I knew or should have known of the danger that Mr. Workman posed to tenants of Kingston Mound Manor Apartments." The counterclaims section further alleged that at the time of the assault, "Mr. Workman was acting (a) with the consent of the Plaintiff (b) under the control and

supervision of the Plaintiff and/or (c) within his authority as an agent or apparent agent of Plaintiff." Appellant then went on to allege that "Plaintiff's unlawful actions are intentional and willful, and/or have been implemented with callous and reckless disregard for the lawfully protected rights of [Appellant] and all other female tenants at Kingston Mound Manor Apartments." Appellant further alleged that "[i]n engaging in the unlawful conduct described above, Plaintiff acted intentionally and maliciously to damage the rights and feelings of [Appellant] and other women, in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. 3601, et seq. and the Ohio Civil Rights Act, O.R.C. 4112.02(H)."

{¶38} In the claims section, Appellant set forth three separate claims under the Fair Housing Act and analogous provisions of the Ohio Civil Rights Act. Appellant prefaced each claim with the phrase "Through the actions of their agent or apparent agent as outlined above, Plaintiff is liable for * * *." In her prayer for relief, Appellant requested, among other things, punitive damages.

{¶39} Thus, although some of the factual allegations contained in the counterclaims section sounded in direct liability, they did not specifically allege the facts demonstrating all of the elements of a negligent hiring and/or supervision claim. For instance, Appellant never utilized the phrases

"negligent hiring" or "negligent supervision" or employed the word "negligence" anywhere in her answer and counterclaim. On the contrary, she did attribute the following descriptions to Appellee's conduct: intentional, willful, callous, reckless disregard, and malicious. We do not believe Appellant's use of these terms are compatible with a negligent hiring and/or supervision claim, the basis of which is essentially that Appellee was not careful enough in its hiring and supervision of Mr. Workman. Rather, these words seem better suited to describe the alleged actions of Mr. Workman as Appellee's agent and/or employee, in reference to the alleged sexual assault and verbal threats.

{¶40} Appellant also argues that the fact she requested punitive damages should have provided "a hint" to Appellee and the court that she was pleading a direct liability claim because punitive damages are not recoverable when the sole theory of liability is vicarious liability. Appellee responds by arguing that punitive damages may never be awarded for mere negligence. But see *Simpkins, supra*, at ¶ 87-88 (discussing that the award of punitive damages in tort actions is currently governed by R.C. 2315.21, which provides that punitive damages are not recoverable in a tort action absent a demonstration of malice or egregious fraud, or that the "principal or master knowingly authorized, participated in, or ratified actions or omissions

of an agent or servant," and further observing that "[p]unitive damages are recoverable in a negligent hiring, supervision or retention case.) (Internal citations omitted).

{¶41} The record reveals that in addition to punitive damages, Appellant requested compensatory damages, reasonable attorneys' fees and costs and that Appellee and its agents and employees "be permanently enjoined from discriminating on the basis of sex against any person in violation of the Fair Housing Act of 1968 and the Ohio Civil Rights Law." Appellant further requested that Appellee "be ordered to take appropriate affirmative action to ensure that the activities complained of above are not engaged in again by them or any of their agents." However, as pointed out by Appellee, the Fair Housing Act itself provides in 42 U.S.C. § 3613(c) that punitive damages may be awarded for breach of the Fair Housing Act.

{¶42} § 3613 specifically provides, in pertinent part, as follows:

(c) Relief which may be granted

(1) In a civil action under subsection (a) of this section, if the

court finds that a discriminatory housing practice has occurred

or is about to occur, the court may award to the plaintiff actual

and punitive damages, and subject to subsection (d) of this

section, may grant as relief, as the court deems appropriate, any

permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

(2) In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person.

Upon review, it appears Appellant's prayer for relief matched, almost verbatim, the relief available under 42 U.S.C. §3613. Thus, the fact Appellant requested punitive damages was consistent with its general claim alleging Fair Housing Act violations and did not necessarily automatically point to a direct liability claim for negligent hiring and/or supervision.

{¶43} Further, Appellant's eighteen-page memorandum in opposition to Appellee's motion to dismiss only expressly referenced vicarious, as opposed to direct, liability. For instance, Appellant referenced "81 Fed. Reg 63074 (Sept. 14, 2016) (promulgating 24 C.F.R. § 100.7(b))" as holding "that a principal is 'vicariously liable for a discriminatory housing practice by [its] agent or employee . . . consistent with agency law." Appellant

further argued in her memorandum she "alleges a quid pro quo claim of sexual harassment based on the actions of Mr. Workman, Plaintiff's maintenance worker." Although Appellant closed her memorandum with the allegation that Appellee "either knew of the risk that Mr. Workman posed to female tenants or should have known of the risk," she ultimately once again argued that "Kingston Mound Manor, through the actions of its maintenance worker, Mr. Workman, egregiously violated the rights of [Appellant * * *] ."

{¶44} Appellant concedes "the drafting of these phrases may have been inartful." We conclude Appellant's counterclaims, taken as a whole and in light of the relief available under the Fair Housing Act, simply alleged vicarious liability claims against Appellee "[t]hrough the actions of their agent or apparent agent," Mr. Workman. Again, although the counterclaim section of Appellant's answer and counterclaim did contain some reference to direct liability principles, the claims section of that pleading abandoned any hint at that theory and instead rested upon vicarious liability principles in accordance with the doctrine of respondeat superior, as explained above. Thus, we reject Appellant's argument that she stated a claim against Appellee for violation of the Fair Housing Act and Ohio Civil Rights Act based on a negligence theory of liability.

{¶45} Having found no merit in either of the arguments raised under Appellant's sole assignment of error, it is overruled.  Accordingly, the judgment of the trial court dismissing Appellant's counterclaim pursuant to Civ.R. 12(B)(6) for failure to state a claim is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court,


BY:    _____
       Jason P. Smith, Presiding Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**